# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: July 23, 2020

Mr. Matthew C. Blickensderfer
Frost Brown Todd
301 E. Fourth Street
Suite 3300
Cincinnati, OH 45202

Mr. Jeffrey W Brennan
McDermott Will & Emery
500 N. Capital Street, N.W.
Washington, DC 20001

Ms. Lynda M. Hill
Frost Brown Todd
150 Third Avenue, S.
Suite 1900
Nashville, TN 37201

Ms. Janet M. Kleinfelter
Office of the Attorney General of Tennessee
P.O. Box 20207
Nashville, TN 37202-0207

Mr. Joshua Taylor Lewis
Frost Brown Todd
150 Third Avenue, S.
Suite 1900
Nashville, TN 37201

Ms. Michelle Lowery
McDermott, Will & Emery
2049 Century Park, E.
38th Floor
Los Angeles, CA 90067

Ms. Jimmie C. Miller
Hunter, Smith & Davis
1212 N. Eastman Road
Kingsport, TN 37664

Mr. Francis X. Santore Jr.
Santore & Santore
P.O. Box 113
Greeneville, TN 37744-0113

                Re:  Case No. 20-5047, *Christine Bearden, et al v. Ballad Health, et al*
                    Originating Case No. : 2:19-cv-00055

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                 Yours very truly,

                                 Deborah S. Hunt, Clerk


                                 Cathryn Lovely
                                 Deputy Clerk

cc:  Mr. John L. Medearis

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0226p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

CHRISTINE BEARDEN; DAVID BEARDEN; TERRI COOK; CAROLYN GIBBONS; ELMER DARRELL GREER; LADONNA F. GREER; MARK HUTCHINS; KEVIN MITCHELL; JAMIE STRANGE PIERSON; CRYSTAL GAIL REGAN,

                      *Plaintiffs-Appellants*,

    *v.*

BALLAD HEALTH; MEDICAL EDUCATION ASSISTANCE CORPORATION, dba East Tennessee Physicians and Associates, dba University Physicians Practice Group; BARBARA ALLEN, JULIE BENNETT, DAVID LESTER, ALAN LEVINE, DAVID MAY, GARY PEACOCK, DOUG SPRINGER, and KEITH WILSON, in their capacities as members of the Board of Ballad Health and/or Medical Education Assistance Corporation; DAVID GOLDEN and SCOTT M. NISWONGER, in their capacities as members of the Board of Ballad Health and/or Medical Education Assistance Corporation and in their official capacities as members of the Board of Trustees of East Tennessee State University; BRIAN NOLAND, in his capacity as a member of the Board of Ballad Health and/or Medical Education Assistance Corporation, in his official capacity as a member of the Board of Trustees of East Tennessee State University and as President of East Tennessee State University and ex-officio member of the Board of Directors of Medical Education Assistance Corporation,

                      *Defendants-Appellees*.

No. 20-5047

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 2:19-cv-00055—Curtis L. Collier, District Judge.

Decided and Filed: July 23, 2020

Before: GIBBONS, GRIFFIN, and THAPAR, Circuit Judges.

___

#### COUNSEL

___

**ON BRIEF:** Francis X. Santore, Jr., SANTORE & SANTORE, Greeneville, Tennessee, for Appellants. Jimmie C. Miller, HUNTER, SMITH & DAVIS, LLP, Kingsport, Tennessee, Jeffrey W. Brennan, MCDERMOTT WILL & EMERY LLP, Washington, D.C., Michelle Lowery, MCDERMOTT WILL & EMERY LLP, Los Angeles, California, for Ballad Health Appellees. Lynda M. Hill, Joshua T. Lewis, FROST BROWN TODD LLC, Nashville, Tennessee, Matthew C. Blickensderfer, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellee Medical Education Assistance Corporation. Janet M. Kleinfelter, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees David Golden, Scott Niswonger, and Brian Noland.

___

#### OPINION

___

THAPAR, Circuit Judge. As our court has previously explained, there are good reasons not to disparage your opponent, especially in court filings. "The reasons include civility; the near-certainty that overstatement will only push the reader away . . . ; and that, even where the record supports an extreme modifier, the better practice is usually to lay out the facts and let the court reach its own conclusions." *Bennett v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 584, 585 (6th Cir. 2013) (cleaned up). The most important reason here is that counsel's colorful insults do nothing to show that his clients have standing to bring this lawsuit. We affirm the district court's dismissal for lack of jurisdiction.

Two years ago, the Tennessee Department of Health allowed two healthcare companies to merge into a single entity known as Ballad Health. Some of the board members of the resulting entity also had ties to another healthcare organization in the area called the Medical Education Assistance Corporation (MEAC). Over a year later, a group of plaintiffs filed a seven-page complaint, alleging that Ballad, MEAC, and various individual defendants had created an interlocking directorate in violation of the Clayton Antitrust Act. *See* 15 U.S.C. § 19.

The defendants soon moved to dismiss the case for lack of standing (among other grounds). In response, the plaintiffs sought leave to amend their complaint. Their proposed twenty-nine-page complaint included the following "allegations":

- That MEAC "surrendered to [Ballad] much in the manner Marshal Petain surrendered France to Adolph Hitler." R. 48-1, Pg. ID 942.

- That the Ballad merger was an "Octopus which was birthed by [two individuals] on one of the local golf courses while [they] were walking down the 'green fairways of indifference,' to the health, safety and welfare of millions of people." *Id.*; *see also id.* at 949 (referring to the merged entity as "the Levine-Greene Octopus").

- That Ballad and MEAC are "intertwined in an incestuous relationship, the likes of which have not been seen since the days of Sodom and Gomorrah." *Id.* at 950; *see also id.* at 943 (describing the defendants as in "an incestuous, antitrust relationship").

- That the Tennessee Department of Health's failure to supervise the defendants "is akin to the Tennessee Bureau of Investigation allowing criminals to rape, murder, pillage, loot and plunder on its watch, while its agents stand by." *Id.* at 951.

- That "a virus has been effectively introduced into the Ballad Board which has sickened all 11 directors, and which requires their permanent quarantine." *Id.* at 954.

Some of these references weren't new. In an earlier brief—which was struck for failure to comply with the local court rules—the plaintiffs described the merged entity as "[t]he Ballad Octopus . . . created from the petri dish of a few so-called economic and business 'leaders' in its market area." R. 38, Pg. ID 828–29. This creature, the plaintiffs continued, "now attempts to slink back into its hidey hole by firing its putrid pool of purple ink into the faces of these plaintiffs, who dare challenge its hegemony over the health care of the persons in this market area, to wit: its Motion to Dismiss." *Id.* at 829. The plaintiffs elaborated on their argument with further animal metaphors. They "wonder[ed]" whether Ballad was "affixing its buzzard-like grin" upon the region, "ready to ravenously pounce upon the medical facilities in these areas like the buzzard swoops down upon the carcass of a dead cow." *Id.* at 835. They described a related entity as a "duck trying to pretend he is a swan." *Id.* at 842. And at one point, they explained: "This Octopus walks like a duck and quacks like a duck, and, therefore, it is a duck." *Id.* at 859.

Nor did matters end there. When the defendants criticized this language as disrespectful, the plaintiffs doubled down and explained *why* they thought these comparisons were appropriate. For instance, the plaintiffs described the history surrounding Marshal Pétain's surrender of France and offered to let the district court "draw its own conclusions" on whether this was "an

apt comparison." R. 57, Pg. ID 2003. They also compared one of the individual defendants, who had stuttered during a prior television interview, to "Porky Pig, a famous Warner Brothers cartoon character, [who] also stuttered." *Id.* at 2007. And the plaintiffs concluded their brief by noting, "[m]ost respectfully," that "Ballad ha[d] been acting like an octopus, by squirting its ink into the ocean of jurisprudence to cloud the issues in this case." *Id.* at 2008.

After these filings, the district court found that the plaintiffs had failed to adequately allege standing and thus dismissed the case for lack of jurisdiction. We review that decision de novo. *See Phillips v. DeWine*, 841 F.3d 405, 413 (6th Cir. 2016).

The "irreducible constitutional minimum of standing" has three well-known requirements: (1) the plaintiff must have suffered an "injury in fact"; (2) that injury must have been "caus[ed]" by the defendant's conduct; and (3) the injury must be "redress[able] by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up); *see also Duncan v. Muzyn*, 885 F.3d 422, 427 (6th Cir. 2018). At the pleading stage, plaintiffs must allege sufficient facts to establish these elements as they would any other element of their suit. *See Lujan*, 504 U.S. at 561. This case begins—and ends—with the first requirement: injury in fact.

To establish an injury in fact, plaintiffs must show that they suffered "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (cleaned up). As for the former two components, plaintiffs must show that they are affected "in a personal and individual way" and must allege something more than a "bare procedural violation" of a statute. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 1550 (2016) (cleaned up); *Hagy v. Demers & Adams*, 882 F.3d 616, 621 (6th Cir. 2018). As for the latter component, plaintiffs must show that they have already suffered an injury or that a threatened injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up); *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865 (6th Cir. 2020). Simply put, the injury-in-fact requirement ensures that courts stay within their proper role of resolving cases or controversies—and nothing more.

Now consider the plaintiffs' complaint. Liberally construed, the complaint addresses injury in fact in three places:

- "All plaintiffs aver that they have standing to bring this litigation, in that [] each has or will sustain injury as a direct and proximate result of the acts to be hereinafter set forth . . . . [I]t may certainly be said that each of the plaintiffs are directly affected by the illegal, improper acts to be alleged, and, therefore, are seeking their own remedies, and not any remedies for any third parties." R. 1, Pg. ID 2.
- "In the extreme, [certain individual defendants] have the authority, in conjunction with [others], to dissolve [MEAC], and thus completely stifle its status as a market competitor with Ballad." *Id.* at 5.
- "Plaintiffs . . . aver that not only they, but the general public in the multi-state service area of both of the corporate defendants, have an interest in seeing that an improper, illegal, interlocking Board of Directors does not govern the regions' dominant health care entity." *Id.*

The first allegation does nothing to help the plaintiffs because it's a "legal conclusion," which need not be accepted as true even at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The second allegation fares little better. The plaintiffs themselves characterize the dissolution of MEAC as an "extreme" scenario and have alleged nothing that would move this event beyond the realm of speculation—let alone show that it is "certainly impending." *Clapper*, 568 U.S. at 409 (cleaned up). What's more, the plaintiffs have not alleged anything to show that this speculative risk will affect them "in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (cleaned up). Based on the complaint, the only thing we know about the plaintiffs is that they live in the local area. We know nothing about what medical services they have sought in the past, what services they will seek in the future, or how the dissolution of MEAC would affect their access to these services.

The third allegation suffers from similar problems. Again, the plaintiffs allege nothing that shows that any injury is "particularized" to them. To the contrary, they frame the case as about an "interest" that the "general public" holds in preventing violations of antitrust law. R. 1, Pg. ID 5. For similar reasons, the plaintiffs have not shown that any injury is "concrete." Instead, their allegation seems much like the "bare procedural violation[s]" that both the

Supreme Court and our court have found to be insufficient to establish standing. *See Spokeo*, 136 S. Ct. at 1549–50; *Hagy*, 882 F.3d at 621–22. All told, the complaint fails to allege an injury in fact.

Nor would it have changed matters if the plaintiffs had been given leave to amend their complaint. It's true that the proposed amended complaint was four times as long as the original. But the additional pages added only insults, not an injury. At least as to standing, the amended complaint consists entirely of unsupported legal conclusions, *see, e.g.*, R. 48-1, Pg. ID 929 ("[A]ll plaintiffs aver that they have a plausible, colorable claim of injury due to the defendants' joint and several violations of the Clayton Antitrust Act's provisions regarding prohibition of interlocking directorates." (emphasis removed)); *id.* at 939 ("Plaintiffs . . . aver that they, individually and jointly are either in danger of being harmed by this interlocking directorate, or, at the very least, are potentially in danger of being harmed by this interlocking directorate."); *id.* at 945 ("In short, plaintiffs aver that they have Article III standing." (emphasis removed)), and events that are never linked to concrete and particularized harms to the plaintiffs, *see, e.g.*, *id.* 940–43 (describing actions taken by the defendants). It is a "long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *Fednav, Ltd. v. Chester*, 547 F.3d 607, 617 (6th Cir. 2008) (cleaned up). This case is no different.

Indeed, the plaintiffs all but admit that they can't satisfy the normal standing requirements. In their proposed amended complaint, they candidly confess that their theory of "injury in fact" might be "an aberration" of the requirement as articulated in prior decisions. R. 48-1, Pg. ID 944. And on appeal, they describe it as "paradoxical[]" that they would be expected to allege a "specific, concrete, imminent or actualized injury"—despite that being the well-established standard. Reply Br. at 5. Instead, the plaintiffs offer a few alternative theories for why they have standing to sue.

The plaintiffs first argue that they need not satisfy the normal standing requirements because the relevant provision of the Clayton Antitrust Act has a unique prophylactic purpose. Yet the plaintiffs point to no authority for this position—and for good reason. "Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase [the] requirement . . . ."

*Spokeo*, 136 S. Ct. at 1547–48 (cleaned up).  As far as we are aware, there's no Clayton Antitrust Act exception to this rule.

It's true that there are still some difficult and unresolved questions about Congress's power to define new injuries in fact.  *See Hagy*, 882 F.3d at 622–23.  But fortunately, we need not wade into those murky waters here.  Nothing in the relevant provisions of the Clayton Antitrust Act purports to create a novel injury in fact.  To the contrary, the Act provides for injunctive relief only "under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity."  15 U.S.C. § 26.  That language hardly suggests an effort to overhaul the case-or-controversy requirement.  And in fact, courts have typically understood antitrust law as imposing a "more onerous" standard than traditional standing analysis (though this heightened showing goes to the merits, not our subject-matter jurisdiction).  *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 402 (6th Cir. 2012).  When it comes to constitutional standing, there appears to be nothing special about antitrust law.  *See, e.g.*, *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 342–43 (5th Cir. 2012) (collecting antitrust cases applying ordinary standing analysis to deny injunctive relief); William C. Holmes & Melissa H. Mangiaracina, *Antitrust Law Handbook* §§ 9:5, 9:7 (2019–20 ed.).

The plaintiffs also argue that we should relax the usual requirements for standing because this case implicates access to an important resource:  healthcare.  Just as courts sometimes say that "death is different," *e.g.*, *Ring v. Arizona*, 536 U.S. 584, 606 (2002) (cleaned up), the plaintiffs say that healthcare is different.  But if anything, this analogy to the death penalty shows why we *can't* relax our usual standing requirements here.  For although the Supreme Court has treated death-penalty cases differently in some ways, it has emphatically refused to "create an exception to traditional standing doctrine" in such cases.  *Whitmore v. Arkansas*, 495 U.S. 149, 161 (1990).  And that makes sense given that the Court has elsewhere described the "core component of standing [as] an essential and unchanging part" of Article III.  *Lujan*, 504 U.S. at 560.  We have no authority to take a different view when it comes to healthcare.

Finally, the plaintiffs argue that they have standing because Ballad previously "stipulated" (in an agreement with the State regarding its merger) that a breach of the agreement would constitute "'irreparable harm.'" Appellant Br. at 22 (quoting R. 1-1, Pg. ID 58). The premise of this argument is flawed because parties can no more stipulate to elements of standing than they can to standing itself. *See, e.g.*, *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019); *Alongi v. Ford Motor Co.*, 386 F.3d 716, 728 (6th Cir. 2004) ("Subject-matter jurisdiction cannot be conferred by consent of the parties . . . ."). And even on its own terms, the stipulation applies only to a "breach or threatened breach" of the agreement (which the plaintiffs have not alleged) and extends only to relief under the agreement itself (to which the plaintiffs are not parties). R. 1-1, Pg. ID 58. In short, this provision does nothing to show that the plaintiffs have suffered an injury in fact.

In sum, the district court correctly dismissed the case for lack of jurisdiction.

One last note. Like the district court, we take a moment to remind plaintiffs' counsel that, as an officer of the court, he is expected to treat other parties in the case (as well as their counsel) with courtesy and professionalism. "Careful research and cogent reasoning, not aspersions, are the proper tools of our trade." *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 860 F.2d 1, 6 n.2 (1st Cir. 1988). That is of course not to say that legal documents must be written in dry legalese. Nor is it to criticize passionate and forceful advocacy in aid of a client's cause—a lawyerly virtue that counsel has displayed at points in this litigation. But just as one cannot "equate contempt with courage or insults with independence," we cannot dismiss the disparaging statements in this case as mere stylistic flourishes or vigorous advocacy. *Sacher v. United States*, 343 U.S. 1, 14 (1952). Counsel will best serve his clients if he remembers this going forward.

We affirm.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 20-5047

CHRISTINE BEARDEN; DAVID BEARDEN; TERRI COOK; CAROLYN GIBBONS; ELMER DARRELL GREER; LADONNA F. GREER; MARK HUTCHINS; KEVIN MITCHELL; JAMIE STRANGE PIERSON; CRYSTAL GAIL REGAN,

    Plaintiffs - Appellants,

    v.

BALLAD HEALTH; MEDICAL EDUCATION ASSISTANCE CORPORATION, dba East Tennessee Physicians and Associates, dba University Physicians Practice Group; BARBARA ALLEN, JULIE BENNETT, DAVID LESTER, ALAN LEVINE, DAVID MAY, GARY PEACOCK, DOUG SPRINGER, and KEITH WILSON, in their capacities as members of the Board of Ballad Health and/or Medical Education Assistance Corporation; DAVID GOLDEN and SCOTT M. NISWONGER, in their capacities as members of the Board of Ballad Health and/or Medical Education Assistance Corporation and in their official capacities as members of the Board of Trustees of East Tennessee State University; BRIAN NOLAND, in his capacity as a member of the Board of Ballad Health and/or Medical Education Assistance Corporation, in his official capacity as a member of the Board of Trustees of East Tennessee State University and as President of East Tennessee State University and ex-officio member of the Board of Directors of Medical Education Assistance Corporation,

    Defendants - Appellees.

**FILED**
Jul 23, 2020
DEBORAH S. HUNT, Clerk

Before: GIBBONS, GRIFFIN, and THAPAR, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.

    THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

    IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk